**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| JULIE M. MYERS and STEVEN G. MYERS, | § § § | |
| Plaintiffs, | § § § | |
| v. | § § | Case No.: 4:11-cv-457 |
| BANK OF AMERICA, N.A., and GREG BERTRAND, KEITH SMILEY, or R.S. PATTON, Substitute Trustee, | § § § § | |
| Defendants. | § | |

<u>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS**</u>

Pending before the court are Defendants' motion to dismiss (Dkt. #9), Plaintiffs' response thereto (Dkt. #10), Defendants' reply (Dkt. #11), and Plaintiffs' sur-reply (Dkt. #12). Having considered Defendants' motion, the responsive briefing, and the relevant legal principles, Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## I.  BACKGROUND

This case arises out of a Note and Deed of Trust between Plaintiffs Julie and Steven Myers ("Plaintiffs") and Mortgage Portfolio Services, Inc. ("MPS") executed on November 17, 1999, in the amount of $240,000.  According to Plaintiffs, the servicing of the mortgage was transferred to Bank of America, N.A., ("Bank of America") then to BAC Home Loan Servicing, LP ("BAC").  Am. Compl. 3.  On or around August 2007, Plaintiffs obtained a second mortgage on their home.  *Id*.  Subsequently, around March 2009, Plaintiffs entered a difficult financial situation and began

discussions with BAC regarding loan modification options or other options to lower their monthly mortgage payments. *Id*. at 4. Plaintiffs sent BAC the requested documents for potential loan modification and were told that BAC would consider the documents to determine if Plaintiffs qualified for the Government Home Affordable Modification Program ("HAMP") or another loan modification program. *Id*. Plaintiffs' account remained current until December 2009, when BAC "instituted a forced escrow account that placed the Myers account immediately into default." *Id*. After their default and upon further communication with BAC, Plaintiffs learned that they had been approved for a trial modification plan and would receive a package regarding the modification before March 1, 2010. *Id*. at 5. However, Plaintiffs received no package and no modification was reflected in their mortgage statement.

Upon the belief that modification was imminent, Plaintiffs assert that they continued earnest communication with BAC and continued to make mortgage payments, though fees and penalties were accruing on their account. In September 2010, a BAC representative again told Plaintiffs that they would soon receive a loan modification, and that they were not at risk of foreclosure. *Id*. at 6. The Plaintiffs contend that after continued miscommunication and erroneous information from BAC, Plaintiffs never received a trial modification offer. In May 2011, Plaintiffs received a notice of foreclosure, informing them that BAC intended to foreclose on their first mortgage on July 5, 2011. *Id*. at 3.

Anticipating the foreclosure sale, Plaintiffs brought this suit in the 401st Judicial District Court of Collin County, Texas, on June 23, 2011. In their amended complaint, Plaintiffs allege that the deed is void and the chain of title is defective. Plaintiffs also seek damages for alleged violations of the Texas Debt Collection Practices Act ("TDCPA"), the Texas Deceptive Trade Practices Act

("DTPA"), as well as for negligent misrepresentation, fraud, unreasonable collection efforts, breach

of contract, and estoppel. Id. at 8–22. On July 20, 2011, Defendants removed the case to this court

(Dkt. #1) pursuant to 28 U.S.C. §§ 1332(a) and 1441(a).

## II. DISCUSSION

### A. LEGAL STANDARD

In resolving a Fed. R. Civ. P. 12(b)(6) motion, a court must accept all of the plaintiff's

allegations as true. *Ballard v. Wall*, 413 F.3d 510, 514 (5th Cir. 2005). A claim will survive an

attack under Rule 12(b)(6) if it "may be supported by showing any set of facts consistent with the

allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). In other words,

a claim may not be dismissed based solely on a court's supposition that the pleader is unlikely "to

find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder."

*Id.* at 563 n.8. Although detailed factual allegations are not required, a plaintiff must provide the

grounds of its entitlement to relief beyond mere "labels and conclusions" and "a formulaic recitation

of the elements of a cause of action will not do." *Id.* at 555. The complaint must be factually

suggestive, so as to "raise a right to relief above the speculative level," *id.* at 555, and into the "realm

of plausible liability." *Id.* at 557 n.5. Facial plausibility is achieved "when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### B. ANALYSIS

#### 1. TEXAS DEBT COLLECTION PRACTICES ACT

Plaintiffs allege violations of Tex. Fin. Code §§ 392.303(a)(2), 392.304(a)(8), and

392.304(a)(19). Am. Comp. 9–12.  Plaintiffs argue that Defendants misrepresented the ownership of the loan, charged improper fees and penalties, misrepresented the amount of the debt owed, and used false representations to collect on a debt.  Defendants argue, however, that there was no misrepresentation of ownership of the loan and that Plaintiffs' allegations fail to state a claim regarding the other charges.  Having read allegations in the amended complaint and assuming the veracity of the Plaintiffs' factual allegations, the court finds that Plaintiffs have pled sufficient facts to survive dismissal of their TDCPA violation claim under sections 392.303(a)(2), 392.304(a)(8), and 392.304(a)(19). *See Iqbal*, 129 S. Ct. at 1950.  Accordingly, Defendants' motion to dismiss the TDCPA claim is **DENIED**.

### 2. TEXAS DECEPTIVE TRADE PRACTICES ACT

Plaintiffs have not brought a separate cause of action under the DTPA.  Rather, Plaintiffs bring the DTPA claim "by incorporation" of the alleged violations of the TDCPA, and sue for damages available under DTPA as well. Am. Compl. 12. However, to meet the DTPA standing requirement, a complaining party must plead and prove that he or she is a "consumer" as defined in the DTPA. TEX. BUS. & COM. CODE ANN. § 17.50(a).  To qualify as a consumer under the DTPA, (1) the person must have sought or acquired goods or services by purchase or lease and (2) the goods or services purchased or leased must form the basis of the complaint. *Id*. at § 17.45(4); *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 539 (Tex. 1981).  Therefore, Plaintiffs must have pled sufficient facts to establish their status as "consumers" in order to bring a claim under the DTPA. Texas courts have consistently held that borrowing money does not constitute acquisition of a good or service. *See La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 566 (Tex. 1984); *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 174–75 (Tex. 1980).  Because lending money

does not constitute the acquisition of a good or service, this court finds that Plaintiffs do not qualify as "consumers" under Section 17.45(4) of the Texas Business and Commerce Code and do not have standing under the DTPA.  Accordingly, Plaintiffs have failed to state a claim under the DTPA and Defendants' motion to dismiss Plaintiffs' DTPA claim is **GRANTED**.

### 3.  NEGLIGENT MISREPRESENTATION AND FRAUD

Defendants argue that the economic loss rule bars Plaintiffs' claims for negligent misrepresentation and fraud.  The court agrees.  Parties to a contract may breach duties in tort or contract or both. *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986).  However, tort obligations "are in general obligations imposed by law—apart and independent of promises made." *Sw. Bell Tel. Co. v. Delanney*, 809 S.W.2d 493, 494 (Tex. 1991) (internal quotation omitted). Therefore, "if the defendant's conduct . . . would give rise to liability *independent of the fact that a contract exists* between the parties, the plaintiff's claims may also sound in tort." *Id*. (emphasis added).  But if a tort claim arises solely from the parties' contractual relationship, Texas courts disallow such a claim.  *See, e.g., Ortega v. City Nat'l Bank*, 97 S.W.3d 765, 777 (Tex. App.—Corpus Christi 2003, no pet.); *Southstar Corp. v. St. Paul Surplus Lines Ins. Co.*, 42 S.W.3d 187, 193–94 (Tex. App.—Corpus Christi 2001, no pet.).  Here, Plaintiffs' tort claims flow solely from the Note and Deed of Trust, because they would not exist but for the contractual relationship between the parties.  Accordingly, the motion to dismiss Plaintiffs' claims for negligent misrepresentation and fraud is **GRANTED**.

### 4.  UNREASONABLE COLLECTION EFFORTS

Plaintiffs allege that BAC misled Plaintiffs for two years with "misinformation and deception," inducing Plaintiffs to believe a loan modification would occur when BAC in fact had

no intention of modifying the loan, but accrued fees and penalties during the process. Am. Compl. 16. Defendants, on the other hand, argue that Plaintiffs' allegations about BAC's statements do not rise to the level of a "willful course of harassment" as is required to plead unreasonable collection efforts. Defs.' Mot. to Dismiss 9.

"Unreasonable collection efforts is a Texas common-law intentional tort that lacks clearly defined elements." *B.F. Jackson, Inc. v. Costar Realty Info., Inc.*, No H-08-3244, 2009 WL 1812922, at *5 (S.D. Tex. May 20, 2009). In Texas, pleadings sufficient to support a claim for unreasonable collection efforts must contain facts that amount to "a course of harassment" by the defendant that "was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm." *See, e.g., Coleman v. Bank of American, N.A.*, No. 3:11-cv-0430, 2011 WL 2516169, at *2 (N.D. Tex. Mar. 27, 2011); *Bray v. Cadle Co.*, No. 4:09-cv-663, 2010 WL 4053794, at *19 (S.D. Tex. Oct. 14, 2010). The Plaintiffs have alleged the following:

> 63. . . . Defendants repeatedly made errors, gave false information, and slandered Plaintiff's credit reputation, and exposed them to ridicule in the community by noticing a foreclosure sale. . .

> 66. Plaintiff has suffered extreme and several [sic] mental anguish and emotional distress resulting in loss of income and mental suffering.

> 68. Plaintiff therefore seeks recovery of all of his actual damages . . . including but not limited to recovery of . . . economic damages, . . . attorney's fees, . . . mental anguish and emotional distress. . . . Defendants' acts were done fraudulently and maliciously with conscious disregard of the serious injurious consequences to plaintiff.

Taking Plaintiffs' allegations as true, the court finds that Plaintiffs have not stated a claim sufficient to survive dismissal at this stage. These allegations do not meet the plausibility standard announced by the United States Supreme Court in *Twombly* and *Iqbal* in that there is no allegation that the

Defendant's collection efforts were intended to inflict bodily harm. Therefore, the Defendants' motion to dismiss Plaintiffs' claim for unreasonable collection efforts is **GRANTED**.

### 5. BREACH OF CONTRACT

Plaintiffs allege that BAC had promised Plaintiffs that, should Plaintiffs complete additional loan modification applications, BAC would "process the applications and . . . halt foreclosure while the review process was pending," yet BAC nevertheless foreclosed while the application was pending. Pls.' Resp. 7. Defendants argue, however, that such a promise is an oral contract barred by the statute of frauds. Defs.' Mot. to Dismiss 10.

In order to establish a breach of contract claim, Plaintiffs must plead facts showing: "(1) the existence of a valid contract; (2) performance or tender of performance; (3) breach by the defendant; and (4) damages resulting from the breach." *Oliphant Fin., LLC v. Patton*, No. 05-17-01731, 2010 WL 936688, at *3 (Tex. App.—Dallas Mar. 17, 2010, pet. filed). Further, in order to properly plead a claim based on breach of the Note and Deed of Trust, Plaintiffs must point to a specific provision in the contract that was breached by the Defendants. *Coleman*, 2011 WL 2516169, at *1 (citing *Case Corp. Inc. v. Hi-Class Bus. Sys. of Am.*, 184 S.W.3d 760, 769–70 (Tex. App.—Dallas 2005, pet. denied)). Here, Plaintiffs do not allege that any specific provision in the Note and Deed of Trust was breached. Rather, Plaintiffs allege that they entered into a new contract with BAC when "each agreed to enter into the loan modification proceedings." Am. Compl. 17.

Accordingly, it appears to the court that Plaintiffs are, in fact, alleging breach of a unilateral contract on the part of BAC. In Texas, a unilateral contract is "created by the promisor promising a benefit if the promisee performs. The contract becomes enforceable when the promisee performs." *Vanegas v. Am. Energy Servs.*, 302 S.W.3d 299, 302 (Tex. 2009). In other words, there are no

mutual promises, as in a bilateral contact. Here, any unilateral contract modifying the underlying Note and Deed of Trust is subject to the requirements of the statute of frauds. *See* TEX. BUS. & COM. CODE ANN. § 26.02(a)–(b) (West 2009) (a loan agreement involving a loan exceeding $50,000 in value is subject to the statute of frauds); *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991) (any contract subject to the statute of frauds and not in writing is unenforceable under Texas law). Thus, any modification of the underlying loan agreement must have been in writing. Because the alleged loan modification here was oral, it is unenforceable until reduced to writing. Therefore, Plaintiffs have failed to allege breach of a unilateral contract on the part of BAC and the Defendants' motion to dismiss this claim is **GRANTED**.

### 6. DOCTRINE OF ESTOPPEL

Plaintiffs' amended complaint alleges estoppel, but fails to inform the court whether their claim is for promissory estoppel or equitable estoppel. *See* Am. Compl. 21. Without guidance from either the amended complaint or Plaintiffs' response to the motion to dismiss, the court cannot adequately assess this claim. Further, Plaintiffs have failed to respond to Defendants' motion to dismiss this claim. Accordingly, the court assumes that Plaintiffs have "no opposition" to the motion and Defendants' motion to dismiss this claim is **GRANTED**. LOCAL RULE CV-7(d).

### III. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. The motion to dismiss is **GRANTED** as to Plaintiffs' claims for violation of the DTPA, as well as for negligent misrepresentation, fraud, unreasonable collection efforts, breach of contract, and estoppel. The motion to dismiss is **DENIED** as to Plaintiffs' claim for violation of the TDCPA.

IT IS SO ORDERED.

**SIGNED this the 31st day of March, 2012.**

_____
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE